434 A.2d 1233

**William E. LEBEAU**

v.

**Marion B. LEBEAU, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 13, 1980.

Filed May 15, 1981.

Reargument Denied Oct. 9, 1981.

Henry E. Rea, Jr., Pittsburgh, for appellant.

Maurice A. Nernberg, Pittsburgh, for appellee.

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

SPAETH, Judge:

This is an action to recover damages for breach of privacy arising from the divulgence of the contents of an intercepted telephone conversation. The jury returned a verdict for $100 damages plus $2,800 counsel fee, and the lower court

refused to enter judgment n. o. v. We have concluded that judgment n. o. v. should be entered.

The action arises from a marital dispute. The parties were married in December 1947 but separated in May 1972, and in October 1972 appellee filed a complaint in divorce. Sometime before October 24, 1972, appellant's father gave her a tape cassette of appellee talking with another woman. Appellant testified that she had not participated in making or procuring the tape cassette, but she admitted playing it for her brother and for the two attorneys who represented her in the divorce action.

Section 5702 of the Invasion of Privacy Act provided: A person commits a misdemeanor of the second degree if he:

(1) intercepts without permission of the parties to the communication a message or other communication by telephone or telegraph;

(2) installs or employs any device for overhearing or recording communications passing through a telephone or telegraph line with intent to intercept a communication in violation of this chapter; or

(3) divulges or uses without the consent of the sender or receiver the existence or contents of any such message or other communication if the actor knows that the message was illegally intercepted, or if he learned of the message in the course of employment with an agency engaged in transmitting it.

Act of Dec. 6, 1972, P.L. 1482, No. 334 § 1, eff. June 6, 1973, 18 Pa.C.S.A. § 5702.[1]

Section 5704 of this Act provided:

Any person who violates or aids, abets, or procures a violation of this chapter shall be liable to any person whose communication is unlawfully intercepted or divulged for treble the amount of any damage resulting

1. This Act was repealed and replaced by The Wiretapping and Electronic Surveillance Act, Act of October 4, 1978, P.L. 831, 18 Pa.C.S.A. § 5701 *et seq.*, effective December 1978.

from such unlawful interception, divulgence or use, but in no event less than $100 or a reasonable attorney's fee.[2]

Appellant argues that she is not liable to pay damages and an attorney's fee under section 5704 of the Invasion of Privacy Act because the Act was not in effect when appellee's conversation with another woman was recorded. So far as subsections 1 and 2 of section 5702 of the Act are concerned, the point is well taken, for it is uncontested that the conversation occurred and was recorded sometime before October 24, 1972. Since the Act did not become effective until June 6, 1973, appellant could not have intercepted or installed or employed any device to record the conversation on or after the effective date of the Act. However, the possibility remains of a violation of subsection 3 of section 5702, which proscribes the *divulgence* or *use* of an intercepted communication. In other words: Granting that the conversation was intercepted before the Act became effective, does the evidence nevertheless show that appellant "divulge[d] or use[d] . . . [the conversation] know[ing] that [it had been] illegally intercepted"?

The first attorney appellant retained to represent her in appellee's action for divorce, Maurice Braunstein, testified that appellant gave him the tape cassette and that he kept it from October 24, 1972, until October 10, 1973, when he returned it to appellant. Appellant testified that sometime thereafter, she gave the tape cassette to the second attorney she retained to represent her in the action for divorce, Henry E. Rea, Jr. She also testified that she played the tape for her brother, and her brother testified that he heard the tape sometime between 1973 and 1975.

The lower court concluded that "[t]here was sufficient evidence which, if believed, established that the content of at least one tape recording was divulged after the effective date of the Act by playing it for [appellant's] brother sometime between 1973 and 1975." (Slip op. at 2.) It will be observed, however, that this conclusion is not equivalent to a conclusion that there was sufficient evidence to estab-

2. This provision has been repealed. *See* footnote 1, *supra.*

lish a violation of subsection 3. That subsection required not only proof of divulgence or use, but also, proof that *"the actor [who divulges or uses] knows that the message was illegally intercepted . . . ."*

Appellant argues that "illegally intercepted" meant "intercepted in a manner forbidden by this Act." Since the Act was not effective when the interception occurred, she concludes, when she divulged appellee's conversation to her brother she was not divulging an "illegally intercepted" conversation. Appellee, on the other hand, argues that "illegally intercepted" incorporated prior statutes proscribing the interception of telephone conversations, and that appellant therefore violated subsection 3 if, when she divulged appellee's conversation to her brother, she knew that it had been illegally intercepted under the law in effect at the time of the interception. Under that law, appellee concludes, the conversation had been illegally intercepted, and in support of this conclusion he cites the Act of July 16, 1957, P.L. 956, No. 411, § 1, 18 P.S. § 3742 (1973–74 Supp.), which provided:[3]

The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows:

Section 1. No person shall intercept a communication by telephone or telegraph without permission of the parties to such communication. No person shall install or employ any device for overhearing or recording communications passing through a telephone or telegraph line with intent to intercept a communication in violation of this act. No person shall divulge or use the contents or purport of a communication intercepted in violation of this act. Whoever wilfully violates or aids, abets or procures a violation of this act is guilty of a misdemeanor, and shall be punishable by imprisonment of not more than one year, or by fine of not more than five thousand dollars ($5000), or both, and shall be liable to any person whose communication is unlawfully intercepted or divulged for treble the amount of any damage resulting from such unlawful

3. This Act was repealed by the Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1 eff. June 6, 1973; 18 Pa.C.S.A. § 5702.

interception, divulgence or use, but in no event less than one hundred dollars ($100) and a reasonable attorney's fee. The term "person" includes natural persons, business associations, partnerships, corporations, or other legal entities, and persons acting or purporting to act for, or in behalf of, any government or subdivision thereof, whether Federal, State or local. The term "divulge" includes divulgence to a fellow employe or official in government or private enterprise or in a judicial, administrative, legislative or other proceeding. Except as proof in a suit or prosecution for a violation of this act, no evidence obtained as a result of an unlawful interception shall be admissible in any such proceeding. Nothing in this act shall be interpreted to apply to acts done by personnel of any telephone or telegraph carrier in the performance of their duties in connection with the construction, maintenance or operation of a telephone or telegraph system.

We need not decide how "illegally intercepted" should be construed. If we accept appellee's construction, still, there was insufficient evidence to support a finding that when appellant divulged appellee's conversation to her brother, she knew that it had been illegally intercepted, either under the Act of July 16, 1957, *supra*, 18 P.S. § 3742, or otherwise. The only evidence of appellant's knowledge was her testimony that her father had told her that "he had taken steps to make inquiries or have them made—I don't recall his exact words—but that he had taken steps to protect me and, again, as much information as was possible to protect me for the future." (R. 128a) By the time of trial, appellant's father had died. It was appellee's burden to prove appellant's knowledge of the illegality of the interception. However, appellee offered no evidence of such knowledge. Thus the case may be compared to one involving a charge of receiving stolen property, where the Commonwealth proves that the goods were stolen, but offers no evidence to prove that the defendant knew or should have known they were. *Commonwealth v. Henderson*, 451 Pa. 452, 304 A.2d 154 (1973); *Commonwealth v. Burke*, 229 Pa.Super. 176, 324 A.2d 525 (1974).

Appellee argues that evidence of appellant's knowledge that his conversation had been illegally intercepted was available but was improperly excluded by the lower court's ruling that appellant's two attorneys could not testify as to their conversations with her due to the attorney-client privilege. We need not consider this argument. Appellee prefaces it with this statement:

There is one additional matter which needs consideration in this case. Should this court decide in one way or another to grant a new trial, then the court should take cognizance of the fact that neither Attorney Maurice Braunstein nor Attorney Henry E. Rea, Jr. were permitted to testify in much detail as the court sustained objections to questions purpounded [sic] them.

Brief for Appellee at 9.

However, appellant has not argued that we should grant a new trial; she has only argued that judgment n. o. v. should be entered.

The order of the lower court is reversed and judgment n. o. v. is entered in favor of appellant.